■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ELIUD MANSO DIAZ, Appellant. [671 NYS2d 772] —Yesawich Jr., J. Appeal from a judgment of the County Court of Montgomery County (Going, J.), rendered August 2, 1996, upon a verdict convicting defendant of the crimes of manslaughter in the first degree and criminal possession of a weapon in the second degree.

On June 27, 1995, a group of individuals was assembled at the corner of Main Street and John Street in the City of Amsterdam, Montgomery County, when an argument erupted be-

tween Luis Cabrera and defendant's brother, Abimael Manso Diaz. There was testimony that during the argument, defendant came out of a nearby store and told some children to go home. After Cabrera (hereinafter decedent) declined an offer to fight one of Abimael's associates—Abimael suffers from a physical disability—decedent was shot three times, sustaining what proved to be fatal wounds to his chest and abdomen.

Defendant was indicted on two counts of murder in the second degree (intentional murder and "depraved indifference" murder), and one count of criminal possession of a weapon in the second degree. At the ensuing jury trial, several eyewitnesses testified that they had seen defendant lift his shirt, pull a gun and fire it at decedent. Convicted of manslaughter in the first degree and possession of a weapon in the second degree, and sentenced to concurrent terms of imprisonment of 8⅓ to 25 years on the manslaughter conviction and 5 to 15 years on the weapons charge, defendant appeals.

Notwithstanding defendant's contrary protestations, we find that no error was committed in connection with the events surrounding the aborted testimony of his brother, Abimael. After Abimael indicated his intention to invoke the 5th Amendment privilege against self-incrimination if called to testify at trial, the People and County Court agreed to grant him immunity from prosecution and his attorney informed him of the consequences that would follow if he refused to testify. When called to the stand (without objection by defense counsel), Abimael initially answered the prosecutor's questions, stating, *inter alia*, that he had not been involved in the street corner dispute, and had not even gone to the corner until he heard the argument from several houses away; he claimed not to have been present when decedent was shot and not to have seen who shot him. He also swore that two police officers had promised him $1,000 and a reduction in the term of his probation if he would testify against defendant.

Before his direct examination was concluded, Abimael became upset and stated that he would answer no further questions; when it became clear that he would not change his mind, Abimael was jailed for contempt; defendant moved for a mistrial, which was denied. On each succeeding day of the trial, Abimael was afforded an opportunity to purge the contempt by completing his testimony, but he remained steadfast in his refusal. On the final day of the trial, defendant again unsuccessfully sought a mistrial. Because defendant had been denied the opportunity to cross-examine Abimael, however, County Court agreed to strike the latter's testimony and instructed the jury accordingly.

Defendant now argues that County Court erred in allowing the People to call Abimael as a witness after he had stated that he would not testify. "The decision to permit the People to call a witness who has already indicated that he or she will refuse to testify is one resting within the sound discretion of the trial court" (*People v Berg*, 59 NY2d 294, 298). In determining whether that discretion has been abused, it is necessary to consider the People's motive in calling the witness, as well as whether the witness's refusal "added critical weight to the prosecution's case in a form not subject to cross-examination" (*id.*).

Here, given the totality of the circumstances, including the prosecutor's agreement to confer immunity upon the witness in an attempt to avoid the need for him to invoke his 5th Amendment privilege, and the fact that Abimael did provide over 20 pages of relevant testimony before refusing to speak further, it cannot be said that he was brought to the stand in "a conscious and flagrant attempt * * * to build a case out of the inferences arising from the use of the testimonial privilege" (*People v Jones*, 138 AD2d 405, 406, *lv denied* 71 NY2d 1028; *see, People v Austin*, 199 AD2d 325, *lv denied* 83 NY2d 908). Moreover, the prosecutor neither referred to Abimael's failure to complete his testimony, nor suggested that any inference be drawn therefrom, in his closing statement (*see, People v Berg, supra,* at 299; *compare, People v Vargas*, 86 NY2d 215, 219-220).

Nor are we of the view that Abimael's refusal to continue testifying, or the testimony that he provided, added "critical weight" to the prosecution's case; the strength of that case came from the testimony of several eyewitnesses, along with the uncontroverted proof that defendant took several steps after the shooting—including fleeing from the scene and changing his clothes—consistent with a consciousness of guilt. In addition, there is no basis in the record for concluding that the jury was unable or unwilling to comply with County Court's instruction to disregard Abimael's testimony in its entirety; we must therefore presume that those instructions were followed (*see, People v Morales*, 205 AD2d 393, 394, *lv denied* 84 NY2d 830).

As for defendant's assertion that County Court erred in failing to strike the testimony and instruct the jury immediately after Abimael ceased answering the prosecutor's questions, it suffices to note that when the trial next resumed, and Abimael again refused to testify, defense counsel acceded to the court's proposal that no action be taken until it could be determined whether the recalcitrant witness would change his mind and

elect to complete his testimony prior to the end of the trial. This course of action was not improper (*cf., Matter of Additional January 1979 Grand Jury v Doe*, 84 AD2d 588).

Defendant's remaining arguments merit little comment. A review of the record reveals ample proof from which a rational jury could conclude, beyond a reasonable doubt, that defendant committed the crimes of which he was convicted. And, given the overwhelming and essentially uncontroverted evidence of defendant's guilt, the verdict cannot be said to be contrary to the weight of the evidence (*see, People v Bleakley*, 69 NY2d 490, 495).

To the extent that County Court may have erred in allowing testimony as to several out-of-court statements purportedly made by Abimael, which defendant maintains constitute inadmissible hearsay, any error was harmless (*see, People v Batista*, 235 AD2d 631, 632, *lv denied* 89 NY2d 1088; *People v Pond*, 217 AD2d 721, 723). Lastly, we are unconvinced that County Court abused its discretion in sentencing defendant as it did, given the callous nature of the crime, or that extraordinary circumstances warrant reduction of that sentence (*see, People v Richard*, 229 AD2d 787, 789, *lv denied* 89 NY2d 928).

Mikoll, J. P., Crew III, Peters and Carpinello, JJ., concur. Ordered that the judgment is affirmed.